*337
 
 bOMAX, J.
 

 I concur with the other
 

 members of the Court in their judgment upon the sufficiency of the indictment, and that there was no error in discharging the jury at the first trial of the case. But I do not concur with them in setting aside the verdict, which, upon a subsequent trial, was rendered by the jury.
 

 It being the province of the jury to decide upon the evidence, and to draw such inferences from the proofs and circumstances as were reasonable, I think the conviction should not be disturbed, unless it be seen that it was contrary to law, and clearly unsustained by any proofs presented to the jury. I am of opinion that the jury were well warranted, upon the proofs exhibited in the record, to find the defendant guilty of “knowingly and wilfully, without lawful authority, but not feloniously, taking and carrying away personal property belonging to another.” Indeed, that the jury could not well have found otherwise. The evidence shewed that Piles, returning home from Marion, requested Stout, the prosecutor, as by authority from Hardesty, the proprietor or the hogs, that he “should take care of the hogs *for the said Hardesty, if the defendant had not taken them; and that he, the said Hardesty, would pay him for the keeping of the said hogs.” Immediately after the request so communicated, Stout penned the hogs, and kept and provided for them. Some weeks after the hogs were put into the pen, as aforesaid, by the prosecutor as aforesaid, and before they were taken away by the defendant, the said Hardesty sent word to the prosecutor, (Stout,) by one Woodfield, to take care of the hogs, and he would pay him for so doing; and not to give them to Dye (the defendant). What was meant by taking care of drove hogs, intended for the market as pork, the jury could have no difficulty in inferring: they were to be taken care of and provided for as pork. This message by Woodfield, confirmatory of the message communicated by Piles, it would seem from the proofs, must have been delivered to Stout within the first four weeks after the hogs were penned. It may have been delivered within a much less period. These proofs went strongly to establish a vested property in Stout as the bailee of Hardesty; with a right in the former to demand compensation for the keep of the hogs; and a possession and a lien upon the hogs, until that compensation was satisfied. Por whilst he was taking care of the hogs, as requested by Hardesty, he was conferring an additional value upon them by the attention he was bestowing, and the food he was providing for them: without which he could not, as requested, have taken care of them in the mode which the jury might well have found was intended by Hardesty, and understood by Stout. Jackson v. Cummings, 5 Mees. & Welsb. 342; Scarfe v. Morgan, 4 Mees. & Welsb. 270. There is nothing in the proofs which bound the jury to consider that the defendant had acquired any interest in the hogs, until he obtained from Hardesty the written evidence of his purchase, which, as it would seem, must have been some four weeks *after the hogs were penned; and after the relation of bailor and bailee for compensation, had commenced between Hardesty and Stout. The jury were warranted by the proofs in finding that the defendant had knowledge of that relation almost simultaneously with its commencement, and that he ought to have known it from the mere circumstance of Stout’s possession, which should have put him upon enquiry by what right that possession was held. When the defendant became the purchaser of the property, he did not, by his purchase, supersede or extinguish the rights and obligations which had been continuing for four weeks, in the relation of bailor and bailee between Hardesty and Stout. In regard to that, he substituted himself, at least as to the lien, in the place of Hardesty. His purchase gave him the power at once to terminate that relation, or to continue the same relation as between himself and Stout. It was not until the expiration of nine weeks after the hogs were penned, and five weeks after Dye had purchased them, that he made any demand upon Stout for the hogs; or, so far as is proved, ever made known to Stout that he had become the purchaser. Were the jury unwarranted to infer from such circumstances, that the relation of bailor and bailee, with all the rights and obligations incident to it, were renewed as between the defendant and the prosecutor, in full force, as they had before existed between the prosecutor and Hardesty. During the period of the nine weeks the hogs had consumed 16 bushels of corn that the prosecutor had provided them, worth from 25 to 37J<¡ cents per bushel. When the demand was made by the defendant for the hogs, the prosecutor, after making some overtures for the purchase of them, refused to give them up to the defendant, unless he was paid for the keeping them: the amount of which, however, was omitted to be stated by Stout. The defendant thereupon declaring that he would pay nothing for the keeping, in the ^presence of the prosecutor, pulled down the pen, and drove the hogs away. In the proof of these circumstances, I do not think the jury erred in regarding the hogs as belonging to the prosecutor, at least by special property; which the law will protect, even as against the owner of the general property himself, as effectually as if that special property had been absolute. The penalties of the statute are designed to protect against trespasses, all property belonging to another, whether holding for the time being, a limited or an absolute interest in the same. The lien, as against the general proprietor, was not in any manner waived by the prosecutor. It may indeed have been incumbent upon Stout to have stated the amount of his charge for keeping; but he may have been deterred from doing so, nor was it at all necessary
 
 *338
 
 that he should have done so, after the defendant’s declaration, that he would pay nothing whatsoever for the keeping. There is nothing in the record to shew satisfactorily, if at all, that Dye put his claim to the possession of the hogs, which he forcibly took, upon any such ground as a bona fide controversy as to the right of property in himself, or the want of right in the prosecutor. His deportment, in taking possession, manifests only his refusal to pay anything for the keep, and a taking and carrying away per fas aut nefas. The record shews no ground for supplying, by any legal intendment, the defendant with the exculpation arising out of a controversy bona fide, in regard to the title in the property, when he himself pretended no such ground of justification or excuse at the time the trespass was committed.
 
 Nor
 
 did he, upon that occasion, claim any exculpation by reason of any complaint as to the measure of Stout’s compensation, claimed for keeping, but utterly refused to pay anything whatever on that account. Even in the case of felonies, the law protects the special property of the bailee against the *larceny of the bailor or general proprietor; much more readily ought the law in this case, to be applied to vin-
 

 dicate the former against the trespasses of the latter. It was, as matters of fact, for the jury to decide upon the evidence and the circumstances of the case, whether there was any such exculpatory matter in the case as a bona fide controversy between the defendant and the prosecutor as to rights of property. Their verdict gives the negative to any such ground of exculpation. It was in like manner for them to decide whether the circumstances shewed a special property in the prosecutor, which he was justified in retaining, and to decide whether the taking and carrying away that property out of his possession was knowingly, wilfully, without lawful authority, but not feloniously: and all these matters have been affirmatively found by their verdict. The proofs justified, in my opinion, the verdict so found by them; and this Court, therefore, ought not to set it aside. I am for affirming the judgment of the Court below in all things. _